UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOSEPH K. NORRIS,<br><br>    Plaintiff,<br><br>v.<br><br>F/N/U COVEY, ET AL.,<br><br>    Defendants. | Case No. 3:16-cv-02719<br><br>Judge Aleta A. Trauger<br>Magistrate Judge Newbern |

To:     The Honorable Aleta A. Trauger, District Judge

### REPORT AND RECOMMENDATION

Now pending before the Court is a motion for summary judgment filed by Defendants Kristian Covey and Marquez Eckford. (Doc. No. 19.) Plaintiff Joseph Norris has responded in opposition (Doc. No. 32) and Defendants filed a reply (Doc. No. 33). For the reasons offered below, the Magistrate Judge RECOMMENDS that Defendants' motion (Doc. No. 19) be GRANTED and that Norris's claims against them be DISMISSED WITH PREJUDICE. The Magistrate Judge further RECOMMENDS that the Court sua sponte DISMISS WITHOUT PREJUDICE Norris's claims against Dr. Aballay, who has yet to be served.

**I.     Background**

   **A.  Factual History**[1]

This lawsuit arises from an incident that occurred on May 27, 2016, while Norris was incarcerated at the Trousdale Turner Correctional Center (TTCC).[2] (Doc. No. 1, PageID# 5.) Norris alleges that, on that day, he "was called to the medical department to receive treatment of [a] preexisting injury [to his] inter[n]al abdom[e]n." (*Id.*) Defendant Kristian Covey—an employee of CoreCivic, which operates TTCC "under contract with the Tennessee Department of Correction" (Doc. No. 20, PageID# 83)—was responsible for "escort[ing]" Norris to the medical department and "pat search[ing]" him there. (Doc. No. 1, PageID# 5.) Norris states that he "was in visible pain;" he "walked with his hands clut[c]hing [his] abdom[e]n" and had a "distorted[,] pain[-ridden] facial expression." (*Id.* at PageID# 7.) At the medical department, Covey directed Norris to put "his hands on the wall." (*Id.*) Covey "began to complain about not wanting to be at work" and then "grabbed [Norris] forcefully." (*Id.*) Norris requested that Covey "not [] be r[ough]" and "lifted his shirt in [an] attempt to show [Covey] [his] serious medical injury." (*Id.*) "At the conclusion of the search, [Covey,] with both hands clenched into fist[s,] . . . and [with] unpr[o]voked hostility, know[ing]ly [and] recklessly struck [Norris] to both sides at the [] area of

---

[1]     The Magistrate Judge relies on the allegations of Norris's complaint to provide necessary context for the claims at issue in the pending motion for summary judgment. Neither Defendants' memorandum (Doc. No. 20), nor their statement of undisputed material facts (Doc. No. 24), provides that context.

[2]     Norris's description of the timeline of the events at issue shifted in his response in opposition to Defendants' motion for summary judgment. There, Norris variously alleges that Covey's assault occurred on the "approxim[a]te" date of June 1, 2016, that it occurred on April 20, 2016, and that it occurred sometime between April 20, 2016 and May 20, 2016. (Doc. No. 32, PageID# 175, 177, 178.) Adding to the confusion, Defendants filed an incident report that Norris submitted, dated May 25, 2016, in which Norris alleges that he was hit by an officer. (Doc. No. 22-3, PageID# 151.) Norris states that he filed an incident report and does not dispute that report that Defendants provide is the one pertaining to this excessive force incident. (Doc. No. 32, PageID# 177–8.)

2

the ribs and injured area of the abdom[e]n with a skilled combat maneuver." (*Id.* at PageID# 8.) The attack caused Norris to "lose balance and the ability to breathe" and left him with "serious internal injuries" including "mass swelling" and a "rupture[d] ul[c]er." (*Id.*)

Norris claims that he immediately attempted to hold Covey accountable for this incident. Nurse Taylor, a witness to the alleged attack, advised Norris to "take legal action by filing [an] incident report [and a] grievance," and encouraged him to "report [Covey] to [the] shift supervisor," Defendant Marquez Eckford. (*Id.* at PageID# 9.) After Norris informed Eckford of what happened, Eckford "assisted [Norris] with [the] incident report and . . . took photos of [Norris's] injuries." (*Id.*) Eckford then denied Norris's request to have charges brought against Covey, explaining that Eckford "didn't have time for that and [that] inter[n]al affairs would be notified and [would] be in touch with [Norris]." (*Id.*) Norris states that he filed a "grievance complaining of conditions of confinement" on May 27, 2016. (*Id.* at PageID# 10.) On May 28, 2016, Eckford told Norris that "internal affairs would come to interview [Norris,]" but Norris states that the interview never took place. (*Id.* at PageID# 10.) Instead, Norris alleges that Eckford "conspired to cover up and conceal" Covey's misconduct. (*Id*. at PageID# 9.)

In the days following Covey's attack, Norris's health worsened. On May 29, 2016, Norris "was unable to get out of bed" and, after "complain[ing] of seizures," was given "intravenous medication . . . and returned to [his] housing unit . . . ." (*Id*.) On May 30, 2016, Norris was in so much pain that he "pleaded for the use of a wheel chair . . . [which] was delivered." (*Id.*) He was then seen by Defendant Dr. Aballay, who gave Norris "pain treatment that was inadequate" and denied Norris's request "to be sent to [the] hospital." (*Id.* at PageID# 11.) Norris was then "released from medical" and told that he "had to walk back to [his] housing unit," despite his renewed request for a wheelchair. (*Id.*) The next day, Norris was found "unresponsive." (*Id.* at PageID# 13.)

3

Norris's "heart [had] stopped" and he was "rushed into emergency surgery" at Sumner County Hospital. (*Id.*) Norris spent "two weeks" in the hospital where he "suffered atrociously." (*Id.*) Norris "received medications through IV, . . . blood transfusions[,] and dialysis." (*Id.*) Norris was discharged from the hospital and placed in a "medical unit for one day." (*Id.*) He then reentered the "general population" at TTCC, despite the fact he had an "open surgical wound." (*Id.*) Norris "was forced to walk to the medical department to receive . . . wound care, [which] caused discomfort . . . [and] debilitating pain." (*Id.* at PageID# 14.)

### B. Procedural History

Norris filed this lawsuit on October 13, 2016, under 42 U.S.C. § 1983, alleging that Covey's assault and the subsequent denial of adequate medical care violated his Eighth Amendment rights, and that the refusal of certain defendants to address his grievances violated his Sixth Amendment rights. (*Id.* at PageID# 5.) Norris's complaint also references the Americans with Disabilities Act (ADA). He states that he is "protected by the [ADA]," that Dr. Aballay denied him the reasonable accommodation of a wheelchair on May 30, 2016, and, more generally, that his rights under the ADA were violated. (*Id*. at PageID# 7, 11, 16.) In his complaint, Norris sues the following defendants in their individual and official capacities: former Warden Blair Leibach, Dr. Aballay, Eckford, Covey, J. Garner, and the Corrections Corporation of America (CCA). (*Id.* at PageID# 15.)

On October 19, 2016, the Court granted Norris's motion to proceed in forma pauperis and dismissed his claims against Leibach and Garner, which were based on their failure to adequately process Norris's grievances. (Doc. No. 3, PageID# 30.) The Court reasoned that "[t]here [was] nothing in the complaint to suggest that [Leibach or Garner] had any part in the alleged assault or denial of medical care." (*Id.*) The Court also dismissed Norris's claims against CCA, noting that

4

Norris "neglected to mention this entity in his recitation of the facts . . . ." (*Id.*) Thus, the remaining defendants in this action are Dr. Aballay, who has yet to be served,[3] Eckford, and Covey. With respect to Eckford and Covey, Norris seeks a "declaratory judgment" that Covey's attack and Eckford's "failure to take action to curb the physical abuse of prisoners" violated the Eighth Amendment.[4] (Doc. No. 1, PageID# 6.) Norris also seeks $100,000 in compensatory damages, "jointly and severally," from Eckford and Covey for the "physical and [] emotional injuries su[]stained during [his] beating." (*Id.* at PageID# 18.) Finally, Norris seeks $20,000 in punitive damages from Eckford and Covey. (*Id.* at PageID# 19.)

Defendants Eckford and Covey (Defendants) have filed a motion for summary judgment (Doc. No. 19), which they support with a memorandum of law, declarations, and a statement of undisputed material facts. (Doc. Nos. 20, 21, 22, 23, 34.) Defendants argue that they are entitled to summary judgment because Norris did not exhaust the administrative remedies available to him at TTCC and, even if that were not the case, Norris cannot show that his Eighth Amendment rights were violated. (Doc. No. 20, PageID# 84.) The Court stayed consideration of Defendants' motion during discovery, which was to be completed by January 8, 2017. (Doc. No. 26, PageID# 160.) On January 11, 2017, Norris filed a motion requesting an extension of time to complete discovery. (Doc. No. 28.) The Court found that motion moot on May 8, 2018, and ordered Norris to file any response in opposition to Defendants' motion for summary judgment by May 29, 2018. (Doc. No.

---

[3] A summons was issued as to Dr. Aballay on November 2, 2016 (Doc. No. 6) and returned unexecuted on January 9, 2017. (Doc. No. 15).

[4] Although Norris also states that he seeks a declaration that Eckford and Covey's conduct constituted an "assault and battery under state law," that lone reference to a state law cause of action is not enough to support the conclusion that Norris has asserted a state tort claim against Defendants. (Doc. No. 1, PageID# 6.) Norris does not reference any state law claim in his response in opposition to Defendants' motion for summary judgment and instead reiterates only the merits of his Eighth Amendment claims. (*See* Doc. No. 32.)

5

31, PageID# 172.) Norris's response in opposition to Defendants' motion for summary judgment was mailed on May 30, 2018, and received by the Court on June 4, 2018.[5] (Doc. No. 32.) Defendants filed a reply. (Doc. No. 33.)

## II.     Legal Standard

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail, the moving party must show the absence of a genuine issue of material fact as to any essential element of the opposing party's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Stiles ex rel. D.S. v. Grainger Cty.*, 819 F.3d 834, 847 (6th Cir. 2016). In determining whether the moving party has met its burden, a court must view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Stiles*, 819 F.3d at 848. A court must not weigh the evidence and determine the truth of the matters asserted but instead must "determine whether there is a genuine issue for trial." *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which it has the burden, however, the moving party is entitled to judgment as a matter of law. *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013) (citation omitted). To preclude summary judgment, the nonmoving party must go beyond the pleadings and present specific facts demonstrating the existence of a genuine issue for trial. *Shreve v. Franklin Cty.*, 743 F.3d 126, 132 (6th Cir. 2014) (citations omitted). "A mere

---

[5]     Defendants do not argue that Norris's response was untimely filed. (Doc. No. 33.)

scintilla of evidence by the nonmoving party is insufficient to defeat summary judgment; 'there must be evidence on which the jury could reasonably find for the [nonmoving party].'" *St. Clair Marine Salvage, Inc. v. Bulgarelli*, 796 F.3d 569, 574 n.2 (6th Cir. 2015) (alteration in original) (quoting *Anderson,* 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment may be granted. *Anderson*, 477 U.S. at 249–52.

This Court's Local Rule 56.01 governs motions for summary judgment. Regarding responses to statements of material facts, Local Rule 56.01(c) provides that, "[a]ny party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record." M.D. Tenn. R. 56.01(c) (motions for summary judgment). Rule 56.01(g) states that "[f]ailure to respond to a moving party's statement of material facts . . . shall indicate that the asserted facts are not disputed for the purposes of summary judgment." *Id.* § 56.01(g).

### III.    Analysis

#### A.  Defendants' Motion for Summary Judgment

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a). A claim that a prison official used excessive force concerns "prison conditions" and is therefore subject to the PLRA's exhaustion requirement.

7

*See Freeman v. Francis*, 196 F.3d 641, 643–44 (6th Cir. 1999). Inmates must only exhaust such remedies as are "available." 42 U.S.C. § 1997e(a); *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). An administrative remedy is not "available" when (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) when the "administrative scheme . . . [is] so opaque that it becomes, practically speaking, incapable of use," or (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859–60.

The PLRA's exhaustion requirement is "not jurisdictional; rather, it is an affirmative defense that must be pleaded and proved by the defendant[]." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (citing *Jones v. Bock*, 549 U.S. 199, 212 (2007)). Defendants must demonstrate "that no reasonable jury could find that the plaintiff exhausted his administrative remedies." *Id.* (citing *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012)). Once Defendants have "put forth evidence" establishing that Norris failed to exhaust his claims, Norris is required "to present 'significant probative evidence' to defeat the motion for summary judgment on this ground." *Napier v. Laurel Cty.*, 636 F.3d 218, 225 (6th Cir. 2011).

For Norris's claims to be considered exhausted under the PLRA, he must have "complie[d] with the grievance procedures put forward by his correctional institution." *Mattox*, 851 F.3d at 590. Full compliance requires pursuit of the grievance "through the final level of administrative appeal." *Chadwick v. Corr. Corp. of Am.*, No. 3:16-CV-00712, 2018 WL 2416198, at *8 (M.D. Tenn. May 29, 2018) (citing *Hartsfield v. Vidor*, 199 F.3d 305, 306 (6th Cir. 1999)). That requirement is consistent with the purpose of exhaustion under the PLRA, which is to "allow prison officials ' a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually

8

end up in court." *Mattox*, 851 F.3d at 591 (quoting *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010)).

Tennessee Department of Corrections Policy 501.01 (Policy 501.01) provides the procedure that governs "processing of a standard inmate grievance at [TTCC]." (Doc. No. 22, PageID# 116, ¶ 3.) That procedure has three levels. At Level I, inmates must file a grievance using a CR-1394 form "within seven calendar days of the occurrence or the most recent occurrences giving rise to the grievance." (Doc. No. 22-1, PageID# 120.) A grievance form that is "improperly completed or contain[s] insufficient information for processing" will be returned to the inmate "with instructions as to proper completion." (*Id.*) Once the grievance chairperson receives the CR-1394, "[t]here will be a seven working-day time limit . . . beginning on the day the grievance begins to be processed." (*Id.* at PageID# 121.) A grievant can appeal a grievance to Level II "[w]ithin five calendar days of being notified of the Level I response . . . ." (*Id.*) The grievance committee and warden respond separately to the appeal and those responses are then forwarded to the chairperson. (*Id.*) The chairperson "allow[s] the grievant to review the grievance materials and responses." (*Id.*) A grievant who is dissatisfied with the Level II response has five days to appeal the grievance to Level III. (*Id.*) At this level, the grievance chairperson forwards a "copy of the grievance and all documentation to the Deputy Commissioner of Operations/designee" for a final disposition. (*Id.*) The final decision will be sent to the chairperson and entered "within 25 working days of the date the appeal was received." (*Id.*) That decision is not subject to appeal. (*Id.*)

Policy 501.01 also states that the "grievance process is inappropriate for" certain matters, such as those concerning "[d]iagnoses by medical professionals, medical co-payments . . . and requirements of substance abuse therapeutic programs. (Doc. No. 22-1, PageID# 122.) "If the chairperson determines a matter to be non-grievable, the grievant may appeal that decision as

9

outlined in the handbook *TDOC Inmate Grievance Procedures*." (*Id.*) That handbook "provide[s] detailed instruction for the filing and processing of inmate grievances and appeals" and "will be available to inmates in the institutional legal library." (*Id.* at PageID# 120.)

Before the Court can determine whether Norris adequately exhausted his federal claims in compliance with the PLRA, the nature of those claims must be established. Norris argues that Covey's attack and Eckford's subsequent failure to investigate it violated the Eighth Amendment. (Doc. No. 1, PageID# 6.) He also alleges generally that his rights under the Americans with Disabilities Act were violated. (*Id.* at PageID# 16.) Defendants argue that the ADA "does not apply to them," but even if it did, Norris failed to exhaust his ADA claims. (Doc. No. 20, PageID# 83 n.1.) The Court need not determine whether the ADA applies to Covey and Eckford because Norris has not asserted ADA claims against them—Norris does not allege that they discriminated against him on the basis of his disability, refused to provide a reasonable modification, or designed or implemented a rule that disproportionally impacts people with disabilities. *See Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 847 (7th Cir. 1999) (citing *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453 (6th Cir. 1997)). His only ADA-related allegation is that Dr. Aballay denied him use of a wheelchair. Thus, the Court considers only Norris's Eighth Amendment claim.[6]

Defendants argue that Norris never filed "a grievance regarding his contention that Covey used excessive force on May 27, 2016, or that Eckford attempted to conceal and refused to

---

[6] Defendants construe Norris's complaint as raising a Sixth Amendment claim against them. (Doc. No. 20, PageID# 83 n.1.) Defendants rightly point out that the "Sixth Amendment guarantees the rights of criminal defendants" and is therefore "inapplicable here." (*Id.*) In his complaint, Norris invokes the Sixth Amendment to raise claims concerning the failure of Defendant Garner to "process grievances." (Doc. No. 1, PageID# 17.) Garner has been dismissed from this action, and none of Norris's claims against Covey or Eckford concerns their failure to process grievances. No Sixth Amendment claim remains in this action.

investigate Covey's alleged conduct" and that they are therefore entitled to summary judgment on those claims.[7] (Doc. No. 20, PageID# 87.) To support their argument, Defendants submitted a statement of undisputed material facts, in which they assert that they have provided the Court with all the grievances that Norris "has filed during his incarceration at [TTCC] . . . ." (Doc. No. 24, PageID# 155, ¶ 2.) A review of those grievances confirms that none involves any allegations concerning an excessive force incident or any failure to investigate it. (*See* Doc. No. 22, PageID# 133–50.)

Despite twice being instructed by the Court that he must respond to Defendants' statement of undisputed material facts in compliance with Local Rule 56.01, Norris did not do so. (Doc. No. 26, PageID# 161; Doc. No. 31, PageID# 172.) "Failure to respond to a moving party's statement of material facts . . . shall indicate that the asserted facts are not disputed for purposes of summary judgment." M.D. Tenn. L.R. 56.01(g) (motions for summary judgment). It is therefore undisputed that the grievances that Defendants filed with the Court represent a complete record of the grievances that Norris has filed at TTCC, and that the record does not contain any grievances related to Norris's excessive force claims.[8] Norris must come forward with "significant probative

---

[7] Norris sued Defendants in their individual and official capacities. (Doc. No. 1, PageID# 15.) Defendants do not distinguish between Norris's individual and official capacity claims in their motion for summary judgment (Doc. No. 20, PageID# 83), likely because an official capacity claim against an employee of CoreCivic is a claim against CoreCivic itself, *see Bowers v. McGee*, No. 1:14-CV-0131, 2015 WL 6554020, at *3 (M.D. Tenn. Oct. 29, 2015), and the Court dismissed all claims against CoreCivic (then known as Corrections Corporation of America) in its screening order. (Doc. No. 3, PageID# 30.)

[8] Norris does allege, in both his complaint and his response in opposition to Defendants' motion for summary judgment, that he submitted a grievance on May 27, 2016 in which he complained of the "conditions of [his] confinement" (Doc. No. 1, PageID# 10) and which was "marked as [a] medical complaint and not grieved." (Doc. No. 32, PageID# 174.) There is no grievance dated May 27, 2016 in the record of Norris's TTCC grievances that Defendants filed with the Court. (Doc. No. 22-2, PageID# 133–50.) Even if Norris had properly disputed Defendants' assertion that they provided a complete record of Norris's TTCC grievances by

11

evidence" to show that Defendants are not entitled to summary judgment on the ground that he failed to exhaust his federal claims against them. *Napier*, 636 F.3d at 225.

In his response, Norris does not argue that he properly exhausted his claims against Defendants and, instead, attacks the adequacy of the TTCC's grievance system. Norris claims that the grievance board is "perpetually [] indifferent to the [e]xhaustion of complaint(s)" due to a lack of staff. (Doc. No. 32, PageID# 174) He also states that he "has submitted [grievances, letters, and incident reports] to establish direct communication and/or notification of the situation," all "to no avail . . . ." (*Id.* at PageID# 178.) His grievances "are marked as [non-grievable] and return[ed] to [him,]" reflecting a "systematic design . . . to deprive [him of the ability] . . . to [redress grievances]." (*Id.*)

Although an administrative remedy is not "available" if it operates as "a simple dead end," Norris has not shown that to be the case here. *Ross*, 136 S. Ct. at 1859. A remedy is properly labeled a "dead end" when, "despite what regulations or guidance materials may promise," officers are "unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* That might be the case if, "for example, [] a prison handbook directs inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions." *Id.*

A review of Norris's grievances in the record reveals no inconsistency between the TTCC's treatment of them and its established grievance procedures. Norris's March 2, 2016 grievance

---

pointing to the allegation in his verified complaint concerning a May 27, 2016 grievance, that would not be enough to enable a reasonable juror to conclude that Norris had exhausted his federal claims against Defendants. That is because (1) Norris provides no information about the nature of the allegations in the May 27, 2016 grievance, making it impossible to conclude that it concerned the excessive force incident or a failure to investigate it and (2) Norris does not allege that he appealed the denial of his grievance as "not grieved." (Doc. No. 32, PageID# 174.)

12

complained that he had not been receiving his medication twice daily as he was supposed to. (Doc. No. 22-2, PageID# 149.) That grievance was rejected on the grounds that (1) a grievance concerning a "diagnosis by medical professionals . . . is inappropriate" for the grievance system and (2) Norris had failed to provide "specific details, i.e. dates, times, [and] names of persons involved as mandated in *Inmate Grievance Handbook*, Page 7, First Level of Review." (*Id.* at PageID# 139.) In his May 16, 2016 grievance, Norris complained again that he was not receiving his medications and also that he was "uncomfortable" around his cell mate. (*Id.* at PageID# 145.) That grievance was rejected on the grounds that "a complaint shall not address multiple issues." (*Id.* at PageID# 144.) Norris's October 24, 2016 grievance concerned his need for "dental treatment" (*id.* at PageID# 134) and was again rejected on the grounds that "a diagnosis by medical professionals" is not appropriate for the grievance procedure and that Norris had failed to provide "specific details." (*Id.* at PageID# 133.) After Norris appealed that response, Norris was informed that, "after investigation of [his] medical file[,] no sick call request [was] noted," and that he needed "to utilize routine sick call for any medical treatment." (*Id.* at PageID# 135.) Finally, Norris's November 8, 2016 grievance complained that he only received part of a package that was sent to him. (*Id.* at PageID# 137.) That grievance was rejected because Norris had again failed to provide "specific details." (*Id.* at PageID# 136.) While the TTCC grievance procedure may be Byzantine, Norris has not shown it to be so opaque that "no ordinary prisoner can make sense of what it demands . . . ." *Ross*, 136 S. Ct. at 1859.

Norris also points out that, even if he did not file a grievance concerning the excessive force incident, he did complete a 5-1C incident report. (Doc. No. 32, PageID# 175.) Norris states that "Nurse Jane advised [him] to file [the report]" and that he filled it out to the best of his ability

13

after receiving it from Eckford.[9] (*Id.*) Defendants filed with the Court an incident report that Norris completed, dated May 25, 2016. (Doc. No. 22-3.) In that report, Norris states that he "want[s] to press charges [illegible] [o]fficer hit me . . . ." (*Id.* at PageID# 151.) Defendants argue that the "incident statement does not change the fact that Norris failed to exhaust his administrative remedies" because "completion of an incident statement is not a component of the grievance process at [TTCC]" and, even if it were, "the incident statement was completed on May 25, 2016, which is two days before the date on which Norris contends that Covey assaulted him." (Doc. No. 20, PageID# 87 n.2.) Norris does not refute these statements.

The fact that Eckford provided Norris with the 5-1C form is not enough to support the conclusion that Eckford attempted to "thwart" exhaustion of Norris's excessive force claim or that TTCC's grievance procedure is too "opaque" to be capable of use. *Ross*, 136 S. Ct. at 1860–61. Norris does not allege that Eckford or anyone else told him that he would exhaust his excessive force claim by filing the 5-1C form or that he should not submit a grievance while Eckford's promised investigation was pending. On the contrary, Norris states that Nurse Taylor encouraged him to report the incident by completing both a 5-1C form and a grievance. (Doc. No. 1, PageID# 9.) Although "[t]here may be circumstances . . . in which an inmate is foreclosed from submitting a grievance by virtue of a concurrent administrative investigation, . . . the record here does not support such a finding." *Kearney v. Gebo*, 713 F. App'x 39, 42 (2d Cir. 2017). Although Norris might have been confused when he received the 5-1C form, he was told to also fill out a grievance regarding the incident, and the record establishes that he was able to file a grievance and appeal its denial when he wanted to. *See Burnett v. Miller*, No. 17-7061, 2018 WL 3060002, at *2 (10th

---

9     In his complaint, Norris alleges that it was Nurse Taylor who encouraged him to fill out the incident report. (Doc. No. 1, PageID# 9.)

Cir. June 20, 2018) (holding that plaintiff's "familiarity with the grievance procedure," which was evidenced by his filing of "at least eleven grievances in a six-month period," defeated his argument that the prison's grievance procedure "is so confusing that it is incapable of use").

Defendants have put forth evidence establishing that Norris never filed a grievance about the use of force incident involving Covey or about Eckford's failure to adequately investigate it. Because Norris has not responded with "significant probative evidence," *Napier*, 636 F.3d at 225, showing that he did properly exhaust or that no administrative remedy was "available" to him, *Ross*, 136 S. Ct. at 1858, Defendants are entitled to summary judgment on Norris's Eighth Amendment claims. Although a dismissal for failure to exhaust is generally without prejudice, because Policy 501.01 requires a grievance to be filed within seven days of an incident (Doc. No. 22-1, PageID# 120), dismissing these claims without prejudice so that Norris could properly exhaust them would be futile. It has been over two years since the alleged excessive force incident took place in May 2016, and almost as much time since Eckford allegedly failed to investigate that incident. (Doc. No. 32, PageID# 176); *see Woodford v. Ngo*, 548 U.S. 81, 91–92 (2006) (explaining that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings); *see also Smith v. Corr. Corp. of Am.*, No. 3:13-1152, 2014 WL 4655287, at \*6 (M.D. Tenn. Sept. 16, 2014).

### B. Norris's Claims Against Dr. Aballay

Norris's claims against Dr. Aballay should be dismissed without prejudice under Federal Rule of Civil Procedure 4(m) because it has been well over ninety days since Norris filed his complaint and Aballay has yet to be served. *See* Fed. R. Civ. P. 4(m). Rule 4(m) states that, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its

own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id.* However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.*

A summons was issued as to Dr. Aballay on November 2, 2016 (Doc. No. 6), and returned unexecuted on January 9, 2017 (Doc. No. 15). The unexecuted summons indicates that, because Dr. Aballay was a Correctional Care Services (CCS) employee, the TTCC forwarded the summons to CCS on November 18, 2016. (*Id.* at PageID# 69.) However, as of December 27, 2016, Dr. Aballay no longer worked for CCS, and the summons was returned unexecuted. (*Id.*) In its September 15, 2017 order, the Court noted that the summons for Aballay had been returned unexecuted. (Doc. No. 16, PageID# 71.) Despite that reminder from the Court, Norris has made no effort to pursue service of Aballay. Norris's claims against Aballay should be dismissed without prejudice to a showing of good cause why he did not pursue service. *See Reynosa v. Schultz*, 282 F. App'x 386, 393 (6th Cir. 2008) (holding that, "[i]n light of [plaintiff's] *pro se* status, and the notice requirement mandated by Rule 4(m), the District Court abused its discretion by not giving proper notice to [plaintiff] prior to dismissing his claims").

**IV.     Recommendation**

For the foregoing reasons, the Magistrate Judge RECOMMENDS that Defendants' motion for summary judgment (Doc. No. 19) be GRANTED and that Norris's claims against them be DISMISSED. The Magistrate Judge further RECOMMENDS that Norris's claims against Dr. Aballay be DISMISSED WIHTOUT PREJUDICE to Norris showing good cause for his failure to pursue service.

Any party has fourteen days after being served with this report and recommendation in which to file any written objections to it. A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

16

Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of further appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

Entered the 20th day of August, 2018.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge